No.  12-35266

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

THE INSTITUTE OF CETACEAN
RESEARCH, a Japanese research
foundation; KYODO SENPAKU
KAISHA, LTD., a Japanese
corporation; TOMOYUKI OGAWA,
an individual; and TOSHIYUKI
MIURA, an individual,

       Plaintiffs-Appellants,

v.

SEA SHEPHERD CONSERVATION
SOCIETY, an Oregon nonprofit
corporation, and PAUL WATSON, an
individual,

       Defendants-Appellees.

─────────────────────────

SEA SHEPHERD CONSERVATION
SOCIETY, an Oregon nonprofit
corporation,

       Counterplaintiff,

v.

THE INSTITUTE OF CETACEAN
RESEARCH, a Japanese research
foundation; KYODO SENPAKU
KAISHA, LTD., a Japanese
corporation; and HIROYUKI
KOMURA, an individual,

       Counterdefendants.

D.C. No. C11-2043 RAJ
Western District of Washington

**DEFENDANT-APPELLEE PAUL WATSON'S MOTION TO PERMIT TRIAL TESTIMONY BY TELEPHONE**

**Date of Argument: October 9, 2012**

**Date of Opinion: February 25, 2013
Amended: May 24, 2013**

**Panel Members:** Kozinski; Tashima; M. Smith, CJJ

**Appellate Commissioner:** Peter L. Shaw

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................... 1

II.   POSITION OF COUNSEL .................................................... 2

III.  FACTUAL BACKGROUND .................................................. 3

III.  LEGAL ARGUMENT ........................................................... 6

    A.    The Risk of Arrest Upon Entry Into the United States
           Constitutes Good Cause and Compelling Circumstances
           to Allow Telephonic Testimony ................................................ 6

    B.    Safeguards Are Available to Ensure Accurate Identification
           of the Witness. ........................................................................ 11

    C.    This Motion is Consistent with the Court's July 3, 2013
           Discovery Order. .................................................................... 13

    D.    This Motion Is Brought Promptly After Plaintiffs Stated
           They Will Seek to Compel Watson's Appearance at Trial. ...... 14

IV.   CONCLUSION ...................................................................... 15

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                          <u>**Page**</u>

*Agyeman v. I.N.S.*,
  296 F.3d 871, 882-83 (9th Cir. 2002) .................................................... 9

*Alderman v. SEC*,
  104 F.3d 285, 288 n.4 (9th Cir. 1997) ............................................. 8, 10

*Beltran-Tirado v. Immigration and Naturalization Service*,
  213 F.3d 1179 (9th Cir. 2000) ........................................................... 7, 8

*Farquhar v. Shelden*,
  116 F.R.D. 70 (S.D.N.Y. 1987) ........................................................... 11

*Gordon v. State of Idaho*,
  778 F.2d 1397 (9th Cir. 1985) ............................................................ 12

*Mill-Run Tours, Inc. v. Khashoggi*,
  124 F.R.D. 547 (S.D.N.Y. 1989) ........................................................ 10

*Mission Capital Works, Inc. v. SC Restaurants, Inc.*,
  No. C-07-1807 JLR, 2008 WL 3850523
  (W.D. Wash. Aug. 18, 2008) ................................................................ 6

*Mission Capital Works, Inc. v. SC Restaurants, Inc.*,
  No. C-07-1807 JLR, 2008 WL 5100313,
  *1 n.12 (W.D. Wash. Dec. 3, 2008) .................................................... 12

*Official Airline Guides, Inc. v. Churchfield Publications, Inc.*,
  756 F. Supp. 1393 (D. Or. 1990),
  *aff'd sub nom. Official Airline Guides, Inc. v. Goss*,
  6 F.3d 1385 (9th Cir. 1993) .............................................................. 8, 9

*Palmer v. Valdez*,
  560 F.3d 965 (9th Cir. 2009),
  *cert. den.* 559 U.S. 906 (2010) ........................................................... 9

*Sussel v. Wynne*,
    No. 05-00444 ACK-KSC, 2006 WL 2860664
    (D. Haw. Oct. 4, 2006) ...................................................................... 12

*United States v. Heshelman*,
    2013 WL 1489389, *2 (6th Cir. Apr. 12, 2013) .................................... 4

*United States v. Kresler*,
    392 Fed. Appx. 765, 2010 WL 3245096 (11th Cir. 2010) .................... 4

*Zolotukhin v. Gonzales*,
    417 F.3d 1073 (9th Cir. 2005) ........................................................ 8, 10

## **Other**

Federal Rule of Civil Procedure 43(a) ............................................ 1, 6-11, 15

# I.    INTRODUCTION

Paul Watson moves for a protective order determining that Watson may give his trial testimony remotely, by telephone.  Mr. Watson has appeared in and is participating fully in this action, but under the present circumstances he should not be ordered to appear in person to testify at trial.  If he were ordered to appear, and attempted to do so, he risks arrest on charges instigated by Plaintiffs.

The Government of Japan, to assist Plaintiff Institute for Cetacean Research (ICR), has brought criminal charges against Watson in Japan and is seeking Watson's arrest and extradition to Japan.  Because of these charges, Watson is virtually certain to be arrested if he attempts to enter the United States to appear at trial in this matter.  If the Court were to order his personal appearance at trial, he would be unable to comply even if he attempted to do so, and would effectively be barred from participating in the trial in his own defense.

The high risk of his arrest and extradition to Japan overwhelmingly outweighs any inconvenience to Plaintiffs in taking Watson's testimony by telephone rather than in person.  In these compelling circumstances, this Court has ample authority to allow trial testimony by telephone under Federal Rule of Civil Procedure 43(a).

Plaintiff ICR is a quasi-governmental entity that is overseen and financed by the Japanese government, which brought the pending charges against Watson.

Plaintiffs' purported desire that Watson testify in person at trial is a pretext; Plaintiffs want Watson to be physically present in the United States so that they can obtain his arrest and extradition to Japan. Plaintiffs' ultimate goal is to prosecute and imprison Watson in Japan for his interference with Plaintiffs' illegal whaling activities.

In determining the mode of testimony at trial, this Court should not enter an order with which Watson could not comply without inevitably subjecting himself to prosecution and lengthy imprisonment. The forced choice Plaintiffs want to impose is damaging to the legal system itself. Watson is a defendant, in a civil action. Plaintiffs know the risk of arrest Watson faces because the charges were brought by the Japanese government, Plaintiffs' ally and sponsor. Plaintiffs should not be able to force Watson to choose between (a) disobeying an order to personally appear at trial in his own defense, thereby risking entry of sanctions and/or judgment against him, or (b) attempting to appear at trial and thereby subjecting himself to arrest and extradition.

## II.     POSITION OF COUNSEL

Counsel for Watson contacted counsel for Plaintiffs on September 4, 2013, and asked whether ICR would object to Watson testifying by telephone at trial.[1] ICR's counsel said it would object to Watson testifying by telephone and would

---

[1] Declaration of Timothy G. Leyh, ¶ 11.

seek to compel Watson to appear in person at trial.[2]  Counsel were unable to resolve this dispute.[3]

### III.    FACTUAL BACKGROUND

The Government of Japan has filed criminal charges against Watson arising out of an encounter between Plaintiffs' vessels and Sea Shepherd vessels in 2010. Japan requested that INTERPOL[4] issue a "Red Notice," which is a request by a member country that INTERPOL notify other member countries that a person is the subject of an arrest warrant and an extradition request.[5]  INTERPOL has done so, and the INTERPOL Red Notice states that Watson is wanted by judicial authorities of Japan for prosecution.[6]

---

[2] *Id.*

[3] *Id*.

[4] According to the INTERPOL web site (www.interpol.int), INTERPOL is an acronym for the International Criminal Police Organization.

[5]  *See* www.interpol.int/Wanted-Persons/(wanted_id)/2010-28800 (Leyh Decl., Ex. 1) (Japan's request for Red Notice); www.interpol.int/News-and-media/News-media-releases/2012/N20120914 (Leyh Decl., Ex. 2) (INTERPOL announcement of Red Notice issued at Japan's request).  INTERPOL "Notices" are international requests for cooperation or alerts allowing police in member countries to share critical crime-related information.  A Red Notice signifies that the named person is wanted by a member nation for prosecution or to serve a sentence based on an arrest warrant or court decision.  *See* www.interpol.int/INTERPOL-expertise/Notices (Leyh Decl., Ex. 3).  INTERPOL "assist[s] the national police forces in identifying and locating these persons with a view to their arrest and extradition . . . ."  *Id.*

[6] *See* Leyh Decl., Ex. 1 (listing charges of "Breaking into the Vessel, Damage to Property, Forcible Obstruction of Business, Injury").  Watson was also the subject of a Red Notice issued by Costa Rica, leading to his arrest in Germany. *See* Declaration of Oliver Wallasch, ¶ 2.

The United States is a member of INTERPOL.[7] An extradition treaty exists between the United States and Japan.[8]  If Mr. Watson were to enter the United States, the Red Notice obligates the United States to notify Japan of Mr. Watson's entry.[9]  At that point Japan would almost certainly ask the United States to provisionally arrest and detain Mr. Watson for the duration of proceedings to extradite him to Japan.[10]  That much is clear from Japan's previous request to the German government to extradite Mr. Watson when he entered Germany in May 2012.[11]

The existing Red Notice, combined with the likely request by Japan to provisionally arrest Mr. Watson if he enters the United States, makes it a virtual

---

[7] *See* www.interpol.int/Member-countries/Americas/United-States (Leyh Decl., Ex. 4).  The National Central Bureau, part of the U.S. Department of Justice, is the United States' official representative to INTERPOL.  *See* www.justice.gov/interpol-washington (Leyh Decl., Ex. 5).

[8] Japan Internat'l Extradition Treaty with the United States, Mar. 3, 1978, 31 U.S.T. 892 (Leyh Decl., Ex. 6).

[9] Declaration of Oliver Wallasch, ¶ 3.  *See* n.5 *supra*; *United States v. Heshelman*, 2013 WL 1489389, *2 (6th Cir. Apr. 12, 2013) (U.S. could locate and arrest the defendant, who lived in Switzerland, by obtaining a "red notice," or outstanding arrest warrant, through INTERPOL; "when a person who is the subject of a red notice tries to enter a country, a red notice is triggered notifying the authorities that the person is wanted by another country [and the requesting country] is then notified of the person's location"); *United States v. Kresler*, 392 Fed. Appx. 765, 2010 WL 3245096 (11th Cir. 2010) (U.S. authorities sought Kresler, an indicted person who had moved to Israel and had become an Israeli citizen; federal agents "sent a draft red notice to INTERPOL, which operated as a request to INTERPOL's member nations to arrest Kresler if he entered their jurisdiction, and, if possible, to extradite him to the United States").

[10] *See* Wallasch Decl., ¶ 3.

certainty that Mr. Watson would be arrested and detained for extradition proceedings if he attempted to enter the United States.[12]  Because extradition proceedings can be lengthy, Mr. Watson's detention during those proceedings could last a year or more.[13]  There is therefore little or no chance that Watson would be permitted to attend the trial of this matter in October 2013.   If he attempted to do so, it is highly likely that Watson would be arrested, extradited to Japan, and prosecuted there.

The charges by the Japanese Government were brought in aid of the whaling activities of Plaintiff ICR, which is overseen and heavily financed by the Japanese Government.[14]  For example, the Japan Government announced that it diverted to ICR $29 million in governmental funds that had been designated for post-earthquake and tsunami reconstruction.[15]  The Japanese government acknowledged

---

[11] *Id.*

[12] *See* Wallasch Decl., ¶ 4.

[13] *Id.*, ¶ 5.

[14] *See* CNN Wire Staff, *Japan says some tsunami reconstruction funds going to whaling*, CNN.com, Dec. 8, 2011, http://www.cnn.com/2011/12/08/world/asia/japan-whaling-fund/index.html  (Leyh Decl., Ex. 7) (Japanese government oversees ICR and announced in August 2013 that it provided ICR with an additional 2.28 billion yen, about $30 million, diverted from tsunami relief funds).

[15] *See* Leyh Decl., Ex. 7 at 1; *see also* Yoree Koh, *Use of Government Recovery Funds Stokes Japan Whaling Row*, Wall Street Journal, Japanrealtime Blog, Dec. 8, 2011, http://blogs.wsj.com/japanrealtime/2011/12/08/use-of-recovery-funds-stokes-japan-whaling-row/ (Leyh Decl., Ex. 8).

that the diverted funds would be used for extra security measures for the whaling fleet operated by ICR.[16]

### III.    LEGAL ARGUMENT

This Court has ample discretion to allow Watson to testify by telephone at trial.  Federal Rule of Civil Procedure 43(a) provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."

In the Ninth Circuit, the Court of Appeals and district courts have applied this rule to allow testimony by telephone when considerations of distance, expense or risk make it a reasonable alternative.  The governing case law demonstrates that the extraordinary circumstances in this case more than satisfy that standard.

### A.    The Risk of Arrest Upon Entry Into the United States Constitutes Good Cause and Compelling Circumstances to Allow Telephonic Testimony.

Ninth Circuit courts, including the Western District of Washington, have frequently allowed telephonic testimony under circumstances far less onerous than those present here, such as when parties or witnesses are out of the state and would incur expense if required to travel to the court to testify.  In *Mission Capital Works, Inc. v. SC Restaurants, Inc.*, No. C-07-1807 JLR, 2008 WL 3850523 (W.D. Wash. Aug. 18, 2008), for example, the plaintiff obtained appointment of a receiver to

---

[16] *See id.*, Leyh Decl., Ex. 7 at 1; Ex. 8 at 1-2.

preserve assets of the defendants' businesses, and moved for contempt sanctions for the defendants' failure to comply with the receiver's requests.  At the contempt hearing, the court allowed telephonic testimony by the receiver and its representatives under Rule 43(a), holding good cause was established because "the witnesses were out of the state and great expense would be incurred if they were required to travel to testify in person."  *Id.* *2 & n.16.  The plaintiff appeared at the hearing only through counsel; the receiver witnesses presented the facts on which plaintiff's case was based.  *Id.* *3.  The court took telephonic testimony from the president of the company appointed as the receiver; an attorney for the receiver; and a representative acting on behalf of the receiver.  *Id.* *3-4.

The Ninth Circuit Court of Appeals applied the same standard to allow telephonic testimony by a witness located in another state in *Beltran-Tirado v. Immigration and Naturalization Service*, 213 F.3d 1179 (9th Cir. 2000).  In *Beltran*, the INS sought deportation of Beltran based in part on evidence she had stolen the identity of another woman.  Beltran claimed the immigration judge violated due process by allowing the victim to testify telephonically at Beltran's deportation hearing, but the Ninth Circuit rejected that claim, saying:

> [The victim] was a sworn, out-of-state witness, and her testimony was subject to cross-examination.  We have previously upheld the

admission of this form of testimony under Federal Rule of Civil
Procedure 43(a).[17]

The court held the telephonic testimony was not hearsay, and was deemed taken

"in open court" as allowed by Rule 43(a).[18]  The telephone testimony also satisfied

statutory requirements that Beltran have a reasonable opportunity to cross-examine

the government's witnesses.  *Id*. at 1186.  The court concluded that telephone

testimony was appropriate because the witness was located in a different state:

> The government had reason to arrange for telephonic testimony
> because [the victim] lived in Missouri and the hearing was in San
> Diego.  Although the telephone presentation cost Beltran the
> opportunity to have the witness's demeanor more fully observed by
> the finder of fact, the testimony would have been admissible in a civil
> court proceeding under Federal Rule of Civil Procedure 43(a).

*Id*. at 1186.

The Ninth Circuit Court of Appeals again approved the use of telephonic

testimony at trial by a distant witness in *Zolotukhin v. Gonzales*, 417 F.3d 1073 (9th

Cir. 2005).  That Court held that an immigration judge had erred in denying the

petitioner's motion to allow the petitioner's expert witness to testify by telephone

---

[17] *See id*., 213 F.3d at 1185 (citing *Alderman v. SEC*, 104 F.3d 285, 288 n.4 (9th
Cir. 1997); *see also Official Airline Guides, Inc. v. Churchfield Publications, Inc.*,
756 F. Supp. 1393, 1398-99 n.2 (D. Or. 1990), *aff'd sub nom. Official Airline
Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993)).  In *Alderman*, an NASD
disciplinary action against a control person of a securities firm, the Ninth Circuit
stated that it rejected the defendant's suggestion that the NASD's credibility
findings were "undermined because [a witness] testified at the hearing by
telephone."  104 F.3d at 288 n.4.
[18] *Id*. at 1185-86.

because the witness lived in Moscow.  *Id*. at 1076 n.3.  The Court held the expert's testimony would have been relevant to the petitioner's claims that he would be subjected to religious persecution in Russia, and that the judge's stated refusal to use court funds to take the expert's telephonic testimony from Russia was a violation of the petitioner's due process rights.  *Id*. at 1076 & n.3.[19]

Similarly, in *Official Airline Guides*, the district court allowed telephone testimony by the defendant's witnesses who were located out of state or in a foreign country.  The court held:

> Plaintiffs continuously objected to the use of telephone testimony of witnesses from out of state or from the United Kingdom.  Pursuant to Federal Rule of Civil Procedure 43(a), these objections are overruled, as the telephone testimony was made in open court and under oath. The court had a greater opportunity to evaluate the credibility of the witnesses through telephone testimony than through deposition testimony offered by both parties.

756 F. Supp. 1393, 1399 n.2.[20]

---

[19] *See also Agyeman v. I.N.S.*, 296 F.3d 871, 882-83 (9th Cir. 2002) (where wife of alien in deportation proceeding suffered from bipolar illness and lived in New Jersey, immigration judge violated alien's due process rights by insisting that the wife travel to Arizona to appear in person at the hearing, and should have allowed her to testify telephonically).

[20] *See also Palmer v. Valdez*, 560 F.3d 965, 969-70 (9th Cir. 2009), *cert. den.* 559 U.S. 906 (2010) (holding district court could require plaintiff to waive right to jury trial in exchange for allowing telephonic testimony by witnesses whom he had neglected to subpoena for trial, where plaintiff failed to raise constitutional objection at trial); *id*. at 972-73 (McKeown, C.J., dissenting) (concluding the plaintiff did not waive the unconstitutional condition placed on his right to jury trial, and commenting: "Use of both contemporaneously transmitted and pre-recorded testimony has been sanctioned by the Supreme Court, circuit courts, the

In all of these cases, where the person testifying was located in a different state or country than the state where the court was located, Ninth Circuit courts have held that considerations of distance and/or the expense of travel to the forum justified the use of telephone testimony under Rule 43(a). In this case, "compelling circumstances" exist that are far greater than mere geographical distance and attendant inconvenience or expense of travel.

One published decision in the Southern District of New York, *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547 (S.D.N.Y. 1989), held that, in determining whether to compel a civil defendant to appear in the forum for a deposition, the court should not consider whether the defendant's travel to the forum would subject him to a risk of arrest and/or extradition on criminal charges, apparently on the premise that to consider such a factor would give the defendant "an advantage" in the litigation.[21] Unlike this case, in *Mill-Run* there was no

---

Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Federal Rule of Civil Procedure 43(a) contemplates the very circumstance that arose here. . . . The Ninth Circuit has . . . acknowledged the propriety of telephonic testimony in the civil arena. In *Zolotukhin* . . . [417 F.3d at 1076], we criticized an immigration judge's refusal to permit the telephonic testimony of petitioner's expert. We have also explicitly approved the use of telephonic testimony by the Securities and Exchange Commission during the course of disciplinary proceedings: 'Nor do we agree with [the] suggestion that the . . . credibility findings are undermined because [the witness] testified at the hearing by telephone.' (quoting *Alderman v. S.E.C.*, 104 F.3d at 288 n.4)).

[21] *Id*. at 551-52. A previous court in that district held to the contrary, concluding it would be "inappropriate for this court to undertake, through a discovery order in a civil case, actions which federal and state prosecutors were either unwilling or

indication that the civil plaintiff had instigated the criminal charges and the extradition request and intended to seize the defendant if he appeared for his deposition. In any case, the Ninth Circuit decisions discussed above have freely allowed telephonic testimony where a witness was located in another state or country, without judging the reasons for the witness's distance from the forum.

An order compelling Watson to appear in person to testify at trial would force Watson either to (1) forfeit his opportunity to testify at trial altogether, or (2) attempt to enter the United States for trial with a high risk that he will be arrested and detained at Plaintiffs' instigation, so that he will not only be prevented from appearing at trial, but also will be extradited to and prosecuted in Japan.[22] An order requiring such a choice between waiving his right to testify in his own defense on one hand and, on the other, likely imprisonment on charges filed by the Plaintiffs' allies, would be unjustified and would deny Watson his right to a fair trial in this proceeding.

**B.    Safeguards Are Available to Ensure Accurate Identification of the Witness.**

Rule 43(a) states that "appropriate safeguards" should be in place for remote testimony. The 1996 Amendments to Rule 43(a) explain that "[s]afeguards must be adopted that ensure accurate identification of the witness and that protect

---

unable to accomplish themselves." *Farquhar v. Shelden*, 116 F.R.D. 70, 73 (S.D.N.Y. 1987).

against influence by persons present with the witness.  Accurate transmission likewise must be assured."

In *Mission Capital*, the court allowed telephonic testimony on the condition that a notary public be present with the witnesses to confirm their identities and administer oaths.  2008 WL 3850523, *2.  The plaintiff filed a statement of the notary's credentials.  *Id*. at 3.  During the hearing, the notary stated she had confirmed the identities of the witnesses who were present with her in a conference room.  *Id*.  She swore in each witness, who then provided contemporaneous telephonic testimony.  *Id*.  Alternatively, a witness testifying remotely may be sworn in remotely.  *See Mission Capital Works, Inc. v. SC Restaurants, Inc.*, No. C-07-1807 JLR, 2008 WL 5100313, *1 n.12 (W.D. Wash. Dec. 3, 2008).  As a third alternative, the witness may simply affirm that he will testify truthfully under penalty of perjury.  *See Gordon v. State of Idaho*, 778 F.2d 1397, 1400-1401 (9th Cir. 1985) (affirmation is sufficient).  Exhibits for use during the examination of the witness should be provided to the witness in advance.  *See Sussel v. Wynne*, No. 05-00444 ACK-KSC, 2006 WL 2860664 (D. Haw. Oct. 4, 2006) (court allowed telephonic or video testimony of a witness located in Alabama and directed that if counsel wished to show a document to the witness during his

---

[22] *See* Wallasch Decl., ¶¶ 3-4.

testimony, counsel must provide the document to the witness prior to the date of the testimony).

The Court may therefore properly order that at the time of Watson's telephone testimony, the following safeguards will be in place:  (1) Watson will be sworn remotely by the Court's deputy, or affirm that his testimony will be truthful under penalty of perjury; and (2) if Plaintiffs intend to question Watson about any documents, copies must be furnished to Watson's counsel for transmission to Watson prior to his testimony.

**C.    This Motion is Consistent with the Court's July 3, 2013 Discovery Order.**

The Court's consideration of the risks Watson faces of arrest and extradition in any attempt to appear for trial are fully consistent with the Court's July 3, 2013 ruling limiting deposition questions concerning certain matters including criminal charges against Watson.  The Court ruled:

> "Watson may be asked whether he has been convicted in any jurisdiction of a crime that fits the definitions in FRE 609(a), but he may not be questioned about the details of any crimes.  Watson may be questioned about other civil proceedings and any testimony he provided in those proceedings.  Watson may not be questioned about the details of his flight from Germany, or from whom he received financial or other assistance in connection with that flight. Watson may not be questioned about his fugitive status.  The fugitive disentitlement doctrine is too remote from the issues at the heart of these proceedings."

Order, Dkt. 193 at 1-2 (July 3, 2013).

- 13 -

This motion is based on the existence of the Japanese Government's arrest warrant and extradition request, which are not disputed. In fact, the Japanese Government took those actions at the behest of Plaintiff ICR. This motion does not describe or rely on "the details of any crimes" charged against him. This motion does not rely on any information about Watson's "fugitive status"; only on the uncontested fact that Watson is not currently in the United States, a fact already known to Plaintiffs because Plaintiffs instigated the INTERPOL Red Notice that will alert them if Watson attempts to enter the United States, or virtually any other country. During discovery Plaintiffs were free to question Watson about the effect of the Red Notice. The Court's July 3, 2013 Order did not grant the broader protective order Watson had sought, which would have precluded inquiry into "any criminal proceeding, past or present, filed in any country, in which Watson is a named defendant, including any issues concerning Watson's listing on any Interpol Red Notice List."[23]

**D.  This Motion Is Brought Promptly After Plaintiffs Stated They Will Seek to Compel Watson's Appearance at Trial.**

This motion is being brought as early as possible after learning that Plaintiffs will seek to compel Watson to appear in person to testify at trial. Last week, when Plaintiffs' counsel was asked to confirm that he had no objection to telephonic

---

[23] Defendant-Appellee Paul Watson's Motion for Protective Order Limiting Deposition Examination of Watson, Dkt. 168-1 at 1 (June 13, 2013).

testimony, he stated that that Plaintiffs would in fact seek to compel Watson to appear at trial to testify in person.[24]

This motion complies with Rule 43's requirement that a party give notice of a need to testify via telephone so that other parties have time in advance of trial to obtain a court ruling on whether telephone testimony will be allowed. A party who makes the request at the time of trial, based on long-standing circumstances, is disfavored. The 1996 Amendments to Rule 43(a) state that "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances. Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known, to enable other parties to . . . secure an advance ruling on transmission so as to know whether to prepare to be present with the witness while testifying." This motion is brought as soon as the necessity for it became apparent, and Watson has taken the initiative to secure an advance ruling well in advance of trial.

### IV.   CONCLUSION

For the reasons stated above, the Court should issue an order that Watson may testify at trial by telephone, with the safeguards proposed herein.

---

[24] Leyh Decl., ¶ 10.

- 15 -

Respectfully submitted this 9th day of September, 2013.

CALFO HARRIGAN LEYH & EAKES LLP


By ___*/s/ Timothy G. Leyh*_____
      Timothy G. Leyh, WSBA #14853
      Charles Jordan, WSBA #19206
      Michelle Buhler, WSBA #16235
      999 Third Avenue, Suite 4400
      Seattle, WA  98104
      (206) 623-1700

      Attorneys for Appellee Paul Watson

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 9, 2013.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Timothy G. Leyh*
Timothy G. Leyh