Case No. 12-35266
IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

THE INSTITUTE OF CETACEAN RESEARCH, a Japanese research foundation; KYODO SENPAKU KAISHA, LTD., a Japanese corporation; TOMOYUKI OGAWA, an individual; and TOSHIYUKI MIURA, an individual,

    Plaintiffs-Appellants

  v.

SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit corporation, and PAUL WATSON, an individual,

    Defendants-Appellees

SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit corporation,

    Counterplaintiff,

  v.

THE INSTITUTE OF CETACEAN RESEARCH, a Japanese research foundation; KYODO SENPAKU KAISHA, LTD., a Japanese corporation; and HIROYUKI KOMURA, an individual,

    Counterdefendants.

D.C. No. C11-2043 RAJ
Western District of Washington

**DEFENDANT-APPELLEE SEA SHEPHERD CONSERVATION SOCIETY'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR PROTECTIVE ORDER**

**Date of Opinion:** February 25, 2013
**Amended:** May 24, 2013

**Panel Members:** Kozinski; Tashima; M. Smith, CJJ

**Appellate Commissioner:**
Peter L. Shaw

## I.     INTRODUCTION

At the heart of defendant-appellee Sea Shepherd Conservation Society's ("SSCS") Cross-Motion for Protective Order (Dkt. #212-1) is the assertion that because this is a proceeding limited to the narrow issue of contempt, the discovery process must be congruent and similarly limited. In opposing SSCS's Cross-Motion and in supporting its own Motion to Compel Compliance (Dkt. #210), plaintiffs-appellants ("the Whalers") make no effort to contest that assertion. Nor do the Whalers dispute that SSCS has invested considerable time, effort, and expense responding to their discovery requests, disproportionate to the scope of this proceeding. This Court should give effect to the Whalers' implicit admission of these facts and circumstances and enter an order protecting SSCS from further discovery.

## II.    ARGUMENT

### A.     The Whalers' Arguments Respecting Burden Are Inaccurate and Insupportable.

In the opening paragraphs of their Combined Response to Cross-Motion & Reply in Support of Motion to Compel ("Combined Response"; Dkt. #219-1), the Whalers assert that "SSCS *never* opposed plaintiffs' original production requests on the grounds of burdensomeness insofar as is relevant here." Combined Response at 3. They further claim that SSCS counsel Charles Moure acknowledged SSCS "had not made any record of burden as to e-mail." Neupert Declaration, Dkt. #219-2 at ¶ 2. Beyond the fact that the Whalers do not state

where or when this alleged admission occurred, their suggestion that SSCS either never asserted an undue burden objection or had somehow waived that objection is absurd. SSCS first stated its undue burden objection in its original responses to the Whalers' RFPs at issue here, Nos. 4, 18, 20, and 21 (*see* Dkt. #150-3), and has since emphasized at every opportunity that collection, review, and production of the tens of thousands of documents implicated by the Whalers' discovery would constitute an unreasonable and disproportionate burden.

The Whalers claim SSCS didn't oppose their motion to compel responses to RFP Nos. 18 and 21 on burden grounds. Neupert Declaration, Dkt. #219-2 at ¶ 2. But SSCS simply chose to emphasize its relevancy objections, as well as its arguments that the requests were overly broad due to a lack of subject matter and/or temporal limitation, and that the Whalers had failed to meet and confer on several issues. SSCS certainly never renounced its undue burden objections which are implicit to all of the other arguments.

After the Order Compelling Discovery issued on June 13, 2013, and SSCS's counsel and the Whalers' counsel reached agreement on a specific production of email, SSCS began producing documents on a rolling basis. *See generally*, Dkt. #212-1. As the Whalers state, that agreement was made without prejudice to the Whalers' ability to seek additional documents after the initial productions. By so agreeing, however, SSCS certainly never waived its rights to renew its own efforts to limit further discovery by, for instance, seeking reconsideration or a protective order, as it has now done.

Moreover, whatever "prejudice" the Whalers now claim would have been significantly mitigated had they either (i) alerted SSCS prior to July 25 (more than three weeks after the last of the significant rolling productions pursuant to the Order occurred) that they found the productions inadequate; or (2) accepted SSCS's numerous good faith offers of financial documents and email production. Instead, the Whalers engaged SSCS in a lengthy meet and confer process, ultimately rejecting SSCS's proposed productions, thereby necessitating motions practice which has further drawn out resolution of the issue by several more weeks.

The Whalers accuse SSCS of trying to "obscure" the facts to keep them from meeting their burden of proof. Combined Response at 3. SSCS's Cross-Motion has nothing to do with trying to play hide the ball, but rather everything to do with wanting and needing to put an end to a discovery process[1] that has been comprehensive, time-consuming, and expensive. Certainly, they cannot challenge SSCS's detailed account of the effort and expense expended in discovery (more than $200,000 to date, at times requiring more than 14 reviewer attorneys in addition to SSCS's trial counsel). Combined Response at 3-4. The Whalers contend they were "not in a position" to challenge SSCS's calculations, in part because SSCS allegedly did not argue burden when it opposed the Whalers' first motion to compel. That contention is simply a non sequitur. First, as described

---

[1] Tellingly, the Whalers do not address or dispute SSCS's assertion that the prolonged discovery in this matter has prejudiced it by delaying and hindering SSCS's preparation for the fast-approaching contempt hearing. *See* SSCS's Response to Compliance Motion, Dkt. #216 at 10.

above, SSCS has always objected to the burden imposed by the Whalers' discovery. Second, SSCS supplied the Whalers with the statistics describing the volumes of data implicated by the Order Compelling Discovery as early as June 17, 2013 (*see* Dkt. #212-3); thus they have had ample time to examine the numbers. The Whalers counsel has never questioned the validity or veracity of those statistics, and does not even try to do so in the Combined Response. The Whalers are not "unable" to assess the data; they simply chose not to.

Finally, the Whalers take an extremely narrow view of "burden" by suggesting SSCS's claims of burden should be disregarded because SSCS may have its costs of defense covered by an insurance policy. The notion of "burden" surely encompasses much more than pure monetary expense—time and effort must still be expended, even if SSCS need not worry about paying the bill. But in this case, worry it must (as the Whaler's own exhibit demonstrates), because SSCS's insurer has filed a declaratory judgment suit seeking to relieve itself of its coverage obligations.

### B. SSCS's Offer of Production Crew Email Was Intended to Be Precise, Not Misleading.

Responding to SSCS's rhetorical query that if the Whalers' counsel was unsure about whether SSCS's proffered production would "get [him] what [he] wanted" perhaps no one would, the Whalers' now claim that SSCS "misstates" the record and ignores an alleged stated concern about what was being offered. Combined Response at 10.

First, SSCS notes that the Whalers in no way responded to SSCS's assertion that the Whalers were not dealing with SSCS in good faith by waiting months to ask for the very first time what the term "held" meant in the context of email production even though that term was included in the communications with them since June. Moreover, when SSCS counsel did not respond to the email in question, it was not because they were "ignoring" a concern. Combined Response at 10. Rather, the Whalers had once again rejected SSCS's offer (though it was an offer that mirrored the Whalers' requested categories of email as stated in their Compliance Motion), thus it was evident that a further response would have been futile.

Second, by precisely stating that SSCS would produce "emails contained in the email accounts set up for the film crew" SSCS counsel was specifically seeking to *not* mislead the Whalers about what SSCS possessed and would be able to produce. Counsel's statement was intended to clearly define the parameters of what emails the Whalers could expect to receive and avoid further questions.

### C. The Whalers' Claimed Need for Financials Is a Disguised Fishing Expedition.

Although they continue to demand all of SSCS's QuickBooks records, the Whalers have still not offered a clear reason why the records pertaining to ODW and OZT are insufficient. The Whalers claim to want to demonstrate an "interconnected web of finances" among Sea Shepherd entities worldwide. To the extent foreign Sea Shepherd entities fund Southern Ocean campaigns through

6

donations and that information is recorded in QuickBooks, such information would be included in the data SSCS has offered. Similarly, to the extent SSCS may have paid or reimbursed another Sea Shepherd entity for a Southern Ocean campaign-related expense and that information is recorded in QuickBooks, that information would also be reflected in the proffered data. Beyond these types of entries, other Sea Shepherd entities' support of non-Southern Ocean campaigns is irrelevant to this case. The Whalers' continued demands for this irrelevant information are not made for a proper purpose.

The Whalers complain of SSCS "belittling" their preoccupation with the $250,000 Animal Planet check, but have no response to SSCS's explanation that neither QuickBooks nor any other SSCS record would allow them to "trace" the check (or any other general operating fund deposits) as they hope. By ignoring this fact, the Whalers again betray their true intent—to burden and harass SSCS and seek information unrelated to the claims of this case.

The Whalers also object to SSCS's suggestion that they obtain financial records through their Wells Fargo Subpoena. It is curious the Whalers claim the cost of obtaining those documents ($13,000, a mere fraction of SSCS's discovery costs to date) is too great, particularly when they claim such a dire "need" for financial information. This complaint is also questionable considering the thousands of dollars in attorneys' fees incurred by the parties in briefing SSCS's motion to quash. Since the Whalers have chosen to no longer pursue the subpoena,

SSCS wonders whether that tactic too was just an attempt to force SSCS to waste time and money.

### D. The Whalers Already Possess the Deep Ecology Emails in Their Entirety.

The Whalers' arguments concerning the "incomplete" production of email regarding the Deep Ecology grant application are unfounded. SSCS produced SSCSUSCONT_00023200 (Dkt. #210-2, Ex. 5) as part of the vast production of Jeff Hansen emails, as agreed between SSCS counsel and Chris Helmer. The Whalers continue to insist that they have not received "complete" documents. However, the attachments they seek were simply not part of the documents produced. As the emails were forwarded along in the chain, attachments were not. Thus when the emails were received by SSCS custodians such as Jeff Hansen, there was no attachment left for SSCS to produce. SSCSUSCONT_00011020 is the single exception, and was produced as an attachment to SSCSUSCONT_00011018. That email is distinguishable from the others because the topmost email in the chain included an attachment.

Additionally, the Whalers have not explained why they even need more information regarding the grant application.

### III. CONCLUSION

SSCS has produced more than 50,000 pages of documents covering every conceivably relevant topic involved in this matter. Its efforts in both time and expense are well documented. Further discovery would be superfluous and

8

wasteful and should be denied. In the event this Court nevertheless finds credence in the Whalers' contention that even more discovery is necessary, SSCS respectfully requests the Court limit any further production to those documents SSCS has already offered through the meet and confer process, since the Whalers' Compliance Motion and Combined Response endorses such a resolution.

RESPECTFULLY SUBMITTED this Friday, September 13, 2013.

> HARRIS & MOURE, pllc
> By: /s/ Charles Moure
> Daniel P. Harris
> Washington State Bar No. 16778
> Charles P. Moure
> Washington State Bar No. 23701
> Aura Y. Gantz
> Washington State Bar No. 44128
> Rebecca L. Millican
> Illinois Attorney No. 6306623
> 600 Stewart Street, Suite 1200
> Seattle, WA  98101
> Tel. (206) 224-5657
> *Of Attorneys for Defendant-Appellee*
> *Sea Shepherd Conservation Society*

## CERTIFICATE OF SERVICE

When All Case Participants are Registered for the Appellate CM/ECF System:

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on Friday, September 13, 2013.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: /s/ Charles Moure
Charles P. Moure
*Of Attorneys for Defendant-Appellee*
*Sea Shepherd Conservation Society*