**No. 12-35266**
Opinion and Memorandum Dated: December 19, 2014
Panel Members: Kozinski, Tashima and M. Smith

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

THE INSTITUTE OF CETACEAN RESEARCH, a Japanese research foundation;
KYODO SENPAKU KAISHA, LTD., a Japanese corporation; TOMOYUKI
OGAWA, an individual; and TOSHIYUKI MIURA, an individual,
Plaintiffs-Appellants,

v.

SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit
corporation; PAUL WATSON, an individual,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington at Seattle
(D.C. No. 2:11-cv-2043-RAJ)

**DEFENDANT-APPELLEE SEA SHEPHERD CONSERVATION
SOCIETY'S MOTION TO STAY THE MANDATE PENDING THE
FILING OF A PETITION FOR CERTIORARI**

Douglas W. Greene
Claire Loebs Davis
Kristin Beneski
LANE POWELL PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
(206) 223-7000
*Attorneys for Sea Shepherd Conservation Society*

Pursuant to Rule 41(d)(2) of the Federal Rules of Appellate Procedure and Ninth Circuit Rules 41-1 and 41-2, Defendant-Appellant Sea Shepherd Conservation Society ("SSCS") respectfully moves for a stay of the Court's mandate pending the filing of a petition for certiorari to the Supreme Court. By operation of Federal Rule of Appellate Procedure 41(b), the mandate is scheduled to issue on or about February 4, 2015.

## I.  INTRODUCTION

The Panel's decision in this case raises significant issues in which the Supreme Court has expressed interest, including issues as to which circuit courts have split following the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), regarding the scope of jurisdiction under the Alien Tort Statute ("ATS"). As discussed below, a stay of this Court's mandate pending SSCS's filing of a petition for a writ of certiorari is warranted because the petition will present substantial questions of law, and the Supreme Court is reasonably likely to grant the petition. There is good cause for a stay because this case should not proceed in the district court when SSCS's petition will raise fundamental questions regarding the court's jurisdiction to entertain the action.

## II.     BACKGROUND

SSCS is an Oregon nonprofit corporation whose mission is to "defend,

conserve, and protect" marine wildlife and ocean ecosystems. Before the injunction at issue in this action, SSCS collaborated with other worldwide organizations that bear some version of the "Sea Shepherd" name, on campaigns designed to prevent plaintiff Institute of Cetacean Research ("ICR") from killing whales in the Southern Ocean. *See* Dkt. 360 at 4.

In December 2011, ICR sued SSCS in the U.S. District Court for the Western District of Washington, seeking to enjoin certain activities during the Southern Ocean whale-protection campaigns. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, No. C11-2043JLR ("Dist. Ct."), Dkt. 1 (W.D. Wash. Dec. 8, 2011). In March 2012, the district court denied ICR's motion for a preliminary injunction, and ICR appealed the decision to this Court. Dist. Ct. Dkts. 95; 103. In December 2012, the Panel issued a *sua sponte* injunction (the "Injunction"), prohibiting SSCS, SSCS founder Paul Watson, "and any party acting in concert with them" from engaging in specified conduct in the Southern Ocean, including approaching ICR's vessels closer than 500 yards, endangering their safe navigation, or attacking them. Dkt. 31.

On February 25, 2013, the Panel issued an opinion supporting the Injunction, which assumed, without analysis, that there was jurisdiction under the ATS to regulate conduct in the Southern Ocean, and which held, *inter alia*, that ICR had

2

pleaded a claim for piracy. Dkt. 50-1. On April 17, 2013, the Supreme Court issued its decision in *Kiobel*, holding that the ATS does not give the U.S. courts jurisdiction over extraterritorial activity, but "leav[ing] open a number of significant questions regarding the reach and interpretation of the Alien Tort Statute." *Kiobel*, 133 S. Ct. at 1669; *id.* at 1669 (Kennedy, J., concurring). The question of whether this Court retained jurisdiction to issue and enforce the Injunction in light of *Kiobel* has since been raised multiple times, including by a motion to dismiss the contempt allegations and motion for rehearing by the former SSCS administrative director. Dkts. 128; 213. On August 13, 2013, the Panel affirmed the Appellate Commissioner's denial of the motion to dismiss, asserting that "even assuming" lack of ATS jurisdiction, the Court had diversity jurisdiction. Dkt. 206 at 1-2.

Following the Injunction, SSCS halted funding and support for the Southern Ocean whale-protection campaigns. *See* Dkt. 314 at 24. Nevertheless, ICR moved to have SSCS, Watson, several former SSCS directors, and the former SSCS administrative director held in contempt of the Injunction as a result of actions taken by other "Sea Shepherd" organizations. Dkt. 37 at 2-3; *see also* Dkts. 54; 105. The Panel referred the motion for contempt to the Appellate Commissioner. Dkt. 44 at 1-2.

In October 2013, the Commissioner held a trial on the contempt motion, and

on January 31, 2014, he submitted a Report and Recommendation that advised the Panel to make no finding of contempt.  Dkt. 314.  On December 19, 2014, the Panel issued an Opinion finding SSCS, Watson, and the former SSCS directors in contempt, in part on the grounds that they had "aided and abetted" a violation of the Injunction by third parties.  Dkt. 360.  The Panel also issued a Memorandum holding that it had extraterritorial jurisdiction to issue and enforce the Injunction even after *Kiobel*, because "Plaintiffs' piracy claims fall within the ambit of the Alien Tort Statute because piracy is a violation of the law of nations."  Dkt. 361 at 3.

On January 2, 2015, SSCS petitioned the Court for rehearing en banc, arguing, *inter alia*, that the Panel's decision conflicted with *Kiobel* by finding that this Court had jurisdiction to enforce an ATS Injunction to regulate extraterritorial conduct.  Dkt. 370.  On January 28, 2015, the Court denied the petition for rehearing.  Dkt. 374.  The Court's mandate is scheduled to issue on or about February 4, 2015.  *See* Fed. R. App. P. 41(b).

## III.   LEGAL STANDARD

Under Federal Rule of Appellate Procedure 41, "[a] party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court."  Staying the issuance of the mandate pending application for a writ of

certiorari is appropriate where (i) "the certiorari petition would present a substantial question" and (ii) "there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A). Although a motion for stay of the mandate "will not be granted as a matter of course" (9th Cir. R. 41-1), "a party seeking a stay of the mandate following this court's judgment need not demonstrate that exceptional circumstances justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Indeed, a motion to stay mandate need be denied only if it is "frivolous or filed merely for delay." 9th Cir. R. 41-1.

## IV. ARGUMENT

### A. SSCS's Certiorari Petition Will Present Substantial Questions

SSCS's petition for certiorari will present substantial questions related to two issues in which the Supreme Court has recently and repeatedly expressed interest: the scope of jurisdiction under the ATS, and the power of the U.S. courts to regulate conduct outside the borders of the United States. Following the Supreme Court's decision in *Kiobel*, the circuit courts have split as to whether U.S. courts can ever exercise extraterritorial jurisdiction under the ATS, and if so, under what circumstances. Even assuming that there are circumstances under which courts can exercise extraterritorial jurisdiction after *Kiobel*, SSCS's petition will present the additional substantial questions of: (i) whether extraterritorial jurisdiction exists

under the ATS for all piracy claims; and (ii) if so, what conduct is cognizable as piracy under the ATS.

> **1.** **The Supreme Court has repeatedly expressed interest in limiting the scope of the ATS, and in limiting the U.S. courts' exercise of extraterritorial jurisdiction**

This case represents the confluence of two issues on which the Supreme Court has recently expressed keen interest: constraining the U.S. courts' use of the ATS to regulate conduct that they deem to be in violation of international law, and limiting the instances in which the U.S. courts can exercise jurisdiction over conduct occurring outside U.S. borders.

In *Kiobel*, the Supreme Court held that the ATS does not grant extraterritorial jurisdiction to U.S. courts. In so holding, the Court relied on the "presumption against extraterritorial application," which provides that "'when a statute gives no clear indication of an extraterritorial application, it has none.'" 131 S. Ct. at 1664 (quoting *Morrison v. Nat'l Austl. Bank Ltd.,* 561 U.S. 247, 248 (2010)). The Court held that, because there was no "clear indication" of congressional intent under the ATS to authorize jurisdiction over conduct occurring abroad, the ATS does not grant courts extraterritorial jurisdiction. *Id.* at 1666.

*Kiobel* followed a series of cases in which the Supreme Court had similarly limited the exercise of extraterritorial jurisdiction, based on the "presumption that

United States law governs domestically but does not rule the world." *See Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007); *see also Morrison*, 561 U.S. at 261, 265 (2010); *Small v. United States*, 544 U.S. 385 (2005); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) ("*Aramco*"). In *Morrison*, the Supreme Court emphasized that "we apply the presumption in all cases," and chastised the Second Circuit for "excis[ing] the presumption against extraterritoriality" from its jurisprudence regarding § 10(b) of the Securities Exchange Act. 561 U.S. at 257, 261, 265. In *Aramco*, the Supreme Court held that the presumption applies to all statutes unless Congress's intent is "clearly expressed" otherwise. 499 U.S. at 248. The *Aramco* Court observed that the presumption against extraterritoriality is of critical national importance because it "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Id.*

Applying these principles to the ATS, the *Kiobel* Court noted that "the danger of unwarranted judicial interference in the conduct of foreign policy is magnified in the context of the ATS, because the question is not what Congress has done but instead what courts may do." 133 S. Ct. at 1664. The ATS, passed as part of the Judiciary Act of 1789, is a "strictly jurisdictional" statute. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004). It provides that "[t]he district courts shall have

original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. In *Sosa*, the Supreme Court held that the ATS could only be used to enforce a "narrow class of international norms" that are "'specific, universal, and obligatory'" and which possess "definite content and acceptance among civilized nations." 542 U.S. 692, 729, 732 (2004) (internal citation omitted).

Because the ATS allows the U.S. courts to entertain causes of action based on their interpretation of "international norms," rather than through the application of any U.S. law, the Supreme Court has emphasized that it is important to constrain the power the courts may exercise under the ATS. *See Sosa*, 542 U.S. at 727 ("[T]he possible collateral consequences of making international rules privately actionable argue for judicial caution."). In light of such concerns, the Supreme Court has indicated that any exercise of extraterritorial jurisdiction under the ATS should be subjected to special scrutiny. *Kiobel*, 133 S. Ct. at 1665 (the need for judicial caution is "all the more pressing" with regard to ATS claims based on extraterritorial conduct).

SSCS's petition for certiorari will raise the "pressing" question of whether the Ninth Circuit can impose and enforce an Injunction regulating conduct outside the territory of the United States. Granting SSCS's petition for certiorari would

8

afford the Supreme Court the opportunity to further define the contours of ATS jurisdiction and the application of the presumption against extraterritoriality. Thus, the Supreme Court is reasonably likely to grant SSCS's petition for certiorari because it will raise "important question[s] of federal law that ha[ve] not been, but should be, settled by" the Supreme Court. Sup. Ct. R. 10(c).

### 2. The Panel's decision broadens a circuit split as to the application of *Kiobel*

SSCS's petition for certiorari will afford the Court an opportunity to clarify what circumstances – if any – allow a court to exercise jurisdiction under the ATS over conduct that occurs outside the territory of the United States.

As discussed above, *Kiobel* held that the ATS does not grant extraterritorial jurisdiction to U.S. courts. Following *Kiobel*, the circuit courts have split as to the proper application of this rule. For example, in *Balintulo v. Daimler AG*, the Second Circuit held unequivocally that, in light of *Kiobel*, ATS claims based on conduct occurring outside the territory of the United States "cannot be brought[.]" 727 F.3d 174, 189 (2d Cir. 2013). By contrast, in *Al Shimari v. CACI Premier Tech., Inc.*, the Fourth Circuit held that it had jurisdiction over claims of torture alleged to have occurred in Iraq, because the claims "'touch[ed] and concern[ed]' the territory of the United States with sufficient force to displace the presumption against extraterritorial application[.]" 758 F.3d 516, 527-28, 530-31 (4th Cir.

9

2014).

Most circuit courts that have considered the issue have declined to find extraterritorial jurisdiction under the ATS in light of *Kiobel*. *See, e.g.*, *Ellul v. Congregation of Christian Bros.*, --- F.3d ----, 2014 WL 6863587, at *5 (2d Cir. Dec. 8, 2014); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 179 (2d Cir. 2014); *Korber v. Bundesrepublik Deutschland*, 739 F.3d 1009, 1012 (7th Cir. 2014); *Mujica v. AirScan Inc.*, 771 F.3d 580, 591 (9th Cir. 2014); *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1035 (9th Cir. 2014); *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1235-36 (11th Cir. 2014); *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185, 1189 (11th Cir. 2014); *Ben-Haim v. Neeman*, 543 F. App'x 152, 156 (3d Cir. 2013).

In this case, however, the Court found that it did have jurisdiction pursuant to the ATS over conduct occurring outside the territory of the United States. Thus, the decision broadens a split among the circuits as to whether – and if so, under what circumstances – courts may exercise such jurisdiction. As such, the Supreme Court is reasonably likely to grant SSCS's petition for certiorari because the petition will seek review of a decision "in conflict with the decision of another United States court of appeals on the same important matter[.]" Sup. Ct. R. 10(a).

### 3. To the extent extraterritorial jurisdiction can exist under the ATS, SSCS's petition will raise significant questions as to its scope

In this case, the Panel found it had jurisdiction under the ATS because ICR

claimed that the extraterritorial conduct at issue constituted piracy; in other words, the Panel appears to have found a "piracy exception" to the *Kiobel* rule barring extraterritorial jurisdiction. If extraterritorial jurisdiction can exist at all under the ATS following *Kiobel*, SSCS's petition for certiorari will thus raise additional substantial questions regarding whether such jurisdiction exists for piracy claims, and the definition and scope of piracy claims under the ATS.

The Panel's decision is unique among the circuit courts: it is the first to find a piracy exception to the *Kiobel* rule in an ATS case. The *Kiobel* Court discussed piracy in determining whether extraterritorial jurisdiction was contemplated by the drafters of the ATS, musing in *dicta* that "pirates may well be a category unto themselves." *Kiobel*, 133 S. Ct. at 1667 (suggesting that piracy occurring on the high seas is "beyond the territorial jurisdiction of the United States or any other country," and that pirates were therefore "fair game wherever found, by any nation, because they generally did not operate within any jurisdiction"). However, the *Kiobel* Court did not hold that piracy claims were an exception to its bar against the exercise of extraterritorial jurisdiction under the ATS. To the contrary, the Court observed that it has "generally treated the high seas the same as foreign soil for purposes of the presumption against extraterritorial application." *Id.* In addition, in a concurrence joined by three other justices, Justice Breyer opined that piracy

11

"do[es] not normally take place in the water; [it] take[s] place on a ship. And a ship is like land, in that it falls within the jurisdiction of the nation whose flag it flies." *Id.* at 1672 (Breyer, J., concurring). Therefore, at least four justices opined that the presumption against extraterritoriality should apply with equal force to piracy claims. *Id.* at 1672-73.

Even if a jurisdictional exception for piracy does exist, SSCS's petition will raise the question of what constitutes piracy under the ATS. The Panel in this case held that piracy includes "illegal acts of violence," including "malicious acts against inanimate objects," committed at sea for "private ends" that include "personal, moral or philosophical" goals. Dkt. 50 at 3-4, 5-6. This is a novel definition that is at odds with Supreme Court precedent and other courts' decisions, and therefore raises a substantial question for review.

To begin with, the Panel's definition is at odds with the Supreme Court's discussion of piracy in *Kiobel*, which invoked Blackstone's definition of piracy: "'those acts of robbery and depredation upon the high seas, which, if committed upon land, would have amounted to felony there[.]'" 133 S. Ct. at 1667 (quoting 4 W. Blackstone, Commentaries on the Laws of England 72 (1769)). On this point, the majority opinion comports with Justice Breyer's four-justice concurrence, which contends that "Congress enacted the ATS to permit recovery of damages

from pirates and others who violated basic international law norms as understood in 1789," the year the ATS was passed. *Kiobel*, 133 S. Ct. at 1671 (Breyer, J., concurring). In 1789, piracy was understood to be robbery and murder at sea. *United States v. Smith*, 18 U.S. 153, 160 (1820). If that definition were to be expanded, Justice Breyer argued, it should encompass "today's pirates," who are "torturers and perpetrators of genocide" because, "like the pirates of old," such criminals "are 'common enemies of all mankind . . . .'" *Kiobel*, 133 S. Ct. at 1672 (Breyer, J., concurring). The Panel's expansive definition of piracy conflicts with both the majority opinion and the four-justice concurrence in *Kiobel*.

The Panel's novel view of piracy also expands the scope of jurisdiction under the ATS, in order to regulate a new norm of international law that has not been recognized by any other court. The Supreme Court held in *Sosa* that courts should exercise "judicial caution" as to ATS claims based on the "present-day law of nations" because, among other considerations, courts "have no congressional mandate to seek out and define new and debatable violations of the law of nations[.]" 542 U.S. at 725-26, 728. Any ATS claims must thus be based on "'specific, universal, and obligatory'" norms of international law, which have "definite content" which has been "accept[ed] among civilized nations." *Id.* at 732, 748. The Panel's expansive definition – which is not based on the historical

13

definition of piracy, and has not been endorsed by any other court – is at odds with *Sosa*'s prohibition on creating new norms of international law for purposes of the ATS.

**B.      There Is Good Cause for a Stay of the Mandate**

As discussed above, the Supreme Court is reasonably likely to grant SSCS's petition for certiorari because the petition will present "important question[s] of federal law that ha[ve] not been, but should be, settled by" the Supreme Court, as well as questions as to which "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter[.]"  Sup. Ct. R. 10(a), (c).  Good cause therefore exists for a stay of the mandate pending the filing and disposition of SSCS's petition for a writ of certiorari.  For the same reasons, this motion is not frivolous, nor is it "filed merely for delay."  9th Cir. R. 41-1.

Furthermore, good cause exists for the stay because issuance of the mandate may lead to additional proceedings in the district court before the resolution of the fundamental jurisdictional questions that will be raised by SSCS's petition for certiorari.  Since April 28, 2014, the district court proceedings regarding ICR's request for a permanent injunction have been stayed pending the issuance of the Ninth Circuit's mandate, by the agreement of the parties.  Dist. Ct. Dkt. 181 at 4-5

14

(W.D. Wash. Apr. 28, 2014).   On December 19, 2014, the Panel directed the

district court to consider ICR's requests for coercive sanctions and an order

compelling compliance, which could result in irreparable harm.  Dkt. 360 at 49.  If

the mandate is not stayed, district court proceedings may resume, despite the fact

that SSCS's petition for certiorari will raise issues that implicate the court's

jurisdiction over the case.  Moreover, a stay of the mandate would not prejudice

ICR, because the district court proceedings have already been stayed for over nine

months – at ICR's request.  *See* Dist. Ct. Dkts. 173; 176; 181 at 2, 4-5.

## V.    CONCLUSION

For the foregoing reasons, SSCS respectfully requests a stay of the mandate

pending the filing and disposition of its petition for a writ of certiorari.

RESPECTFULLY SUBMITTED this 3rd day of February 2015.

LANE POWELL PC


By /Claire Loebs Davis

Claire Loebs Davis
Kristin Beneski
Douglas W. Greene
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101-2338
Phone: 206-223-7000
*Attorneys for Defendant Sea Shepherd
Conservation Society*

15

## **CERTIFICATE OF SERVICE**

U.S Court of Appeal Docket Number 12-35266

I, Claire Loebs Davis, hereby certify that on the 2nd day of February 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 3rd day of February 2015.

By   s/Claire Loebs Davis_____